**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| **CURTIS L. WESTBROOK,** | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
|      vs. | ) CAUSE NO. 1:14-cv-9-WTL-DML |
| | ) |
| **KEIHIN AIRCON NORTH AMERICA, et al.,** | ) |
| | ) |
|    Defendants. | ) |

**ENTRY ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This cause is before the Court on the motion for summary judgment filed by Defendants Keihin Aircon North America, Inc., ("Keihin") and Donald Sanders (Dkt. No. 133). The motion is fully briefed and the Court, being duly advised, **GRANTS** the motion for the reasons set forth below.

**I. SUMMARY JUDGMENT STANDARD**

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed and all reasonable inferences must be drawn in the non-movant's favor. *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007); *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) ("We view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor."). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490.

Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court is not required to 'scour the record in search of evidence to defeat a motion for summary judgment.'" *Ritchie v. Glidden Co.,* 242 F.3d 713, 723 (7th Cir. 2001) (citation omitted).

## II. BACKGROUND

The facts of record viewed in the light most favorable to Westbrook are as follow.

Westbrook worked for First Call Temporary Services, Inc., ("First Call"), a staffing agency that provides temporary employees to businesses. In September 2011, First Call assigned Westbrook to work at Keihin's plant in Muncie, Indiana.

On January 6, 2012, Westbrook arrived to work and clocked in at 3:11 p.m. Before his shift started, he went to speak to Carrie Branham, who was the First Call on-site contact person at Keihin. Westbrook asked Branham to reassign him to a different workplace, and specifically asked about a work site in Alexandria, Indiana. Branham explained that she would have to inquire what other jobs might be available and told him that he would have to quit his job at Keihin in order to be reassigned, something that Westbrook did not believe was an accurate statement of First Call's policy. He told Branham that he was not going to quit, but that he was going to go home for the day. Westbrook also called the First Call office and spoke to Electra Young, First Call's Regional Manager. He asked her what job assignments were available in Alexandria; her answer was vague, and Westbrook ended the call.

Westbrook declined to give Branham a reason for wanting to be reassigned. As he explained in his deposition, his reason was that he had heard that some of the other employees from his orientation class (i.e., employees who started working for Keihin at the same time as he

did) had been offered direct employment by Keihin over the Christmas break and he was upset that he had not received such an offer.

After his conversation with Branham, Westbrook went to the production line and told Pam Nash, who was the line support employee on the line at the time, that he was leaving for the day. He then left. First Call alleges that Westbrook did not clock out before he left; Westbrook alleges that he did. The Court will assume for purposes of this Entry that he did clock out.

After learning that Westbrook had left work, Branham consulted with Sanders and decided to end Westbrook's assignment at Keihin. She called Westbrook and informed him that "DJ [Sanders] said they don't want you back."

### III. DISCUSSION

In his Amended Complaint, Westbrook alleges that the Defendants conspired to terminate his employment "in retaliation of his exercise of his rights and privileges"; that they terminated him in violation of his "rights and privileges regarding right to apply for and enjoy employment"; and that they "deprived [him] of his right and privilege to clock out and go home after notifying the proper personnel." Dkt. No. 37. He cited to the following statutes in his Amended Complaint: 18 U.SC. §§ 241, 242, 245; 42 U.S.C. §§ 1981, 1983, 1985, and 1988. The Court granted the Defendants' motion for judgment on the pleadings as to all of the claims asserted by Westbrook except for his claim under 42 U.S.C. § 1981[1] ("Section 1981") against both Defendants and his claim for conspiracy to violate his rights under Section 1981 brought against Keihin pursuant to 42 U.S.C. § 1985(3) ("Section 1985").

---

[1] The Defendants quite sensibly did not move for judgment on the pleadings with regard to Westbrook's § 1981 claim, as Westbrook made clear at that time that he was asserting a race discrimination claim, *see* Dkt. No. 29, and the bar for pleading such a claim, especially for a pro se plaintiff, is very low.

Westbrook makes it clear in his deposition and in his response to the Defendants' motion for summary judgment that he filed this case because he does not believe Keihin had the right to terminate his employment assignment for leaving work. Westbrook is incorrect. In Indiana, unless an exception is applicable, employees are employees at-will, which means that an employee can be terminated for a "good reason, a bad reason, or no reason at all." *Meyers v. Meyers*, 861 N.E.2d 704, 706 (Ind. 2007) (citation omitted).[2] The only applicable exception remotely implicated by Westbrook is that created by Section 1981, which makes it a violation of federal law for an employer to discriminate on the basis of race or national origin when "mak[ing] or enforc[ing] contracts." 42 U.S.C. § 1981. In response to the Defendants' motion for summary judgment, Westbrook makes it clear that he no longer alleges that the Defendants discriminated against him on the basis of race.[3] *See, e.g.*, Dkt. No. 145 at 20 ("[T]he plaintiff does not now accuse the Defendant of race discrimination."). Given this fact, Westbrook cannot maintain a discrimination claim under Section 1981.

Westbrook also argues that he was retaliated against by the Defendants for engaging in "protected activity." "The Supreme Court has held that § 1981 authorizes claims for retaliation, if one person takes action against another for asserting the right to substantive contractual equality provided by § 1981." *Smith v. Bray*, 681 F.3d 888, 896 (7th Cir. 2012) (*CBOCS West, Inc. v. Humphries,* 553 U.S. 442, 445 (2008)). The "protected activity" that Westbrook alleges he engaged in is "asserting his right to complain by initial inquiry and following up with additional inquiry for clarity," Dkt. No. 145 at 16, which presumably refers to his request to be

---

[2]Indeed, the employee handbook excerpts provided by Westbrook echo the at-will arrangement of his assignment at Keihin: "Just as you may resign at any time, the company may end your temporary assignment at any time." Dkt. No. 145-2 at 4.

[3]Westbrook has never asserted a claim for national origin discrimination.

4

reassigned to another workplace; Westbrook might also be asserting that his choosing to leave work for the day was "protected activity." Westbrook misunderstands the law, however. In order to support a claim for retaliation under Section 1981, the "protected activity" must involve complaining about the kind of discrimination that Section 1981 prohibits—that is, discrimination based on race or national origin. Westbrook presents no evidence that he complained of that type of discrimination to the Defendants at any time prior to his termination. Accordingly, the Defendants are entitled to summary judgment on Westbrook's claims under Section 1981.

Westbrook's Section 1985 claim fares no better. 42 U.S.C. § 1985(3) provides:

> If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

Westbrook seems to interpret this provision as applying to a conspiracy to deprive him of his "rights and privileges afforded [him] by the Defendant's own handbook and attendance policies." Dkt. No. 145 at 21. Given the rather arcane language of Section 1985(3), the Court understands how Westbrook may have reached that conclusion. The reality is, however, that "[i]n order to recover under Section 1985(3), a plaintiff must establish that 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators'

5

action' exists." *D'Amato v. Wisconsin Gas Co.*, 760 F.2d 1474, 1485 (7th Cir. 1985) (quoting *Griffin v. Breckenridge,* 403 U.S. 88, 102 (1971)). Westbrook does not allege any such class-based discrimination; he has disavowed any claim that he was discriminated against on the basis of race, and he points to no other protected class to which he belongs that would support a Section 1985(3) claim.[4] Accordingly, the Defendants are entitled to summary judgment on Westbrook's Section 1985(3) claim as well.

## IV. CONCLUSION

Westbrook alleges that his termination was unfair and that under Keihin's own policies he should have been merely disciplined, or given an "occurrence," not terminated. But it is not a violation of Section 1981 or Section 1985 for an employer to fail to follow its own procedures with regard to an at-will employee. No matter how unfairly Westbrook may have been treated, because he concedes that the treatment at issue was not motivated by racial bias, Westbrook cannot prevail under Section 1981 or Section 1985. Accordingly, the Defendants' motion for summary judgment (Dkt. No. 133) is **GRANTED**. All other pending motions are **DENIED AS MOOT**. Judgment will be entered in favor of the Defendants on all of Westbrook's claims.

SO ORDERED: 3/3/16

*[signature: William T Lawrence]*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

---

[4] He does suggest that as a temporary employee he was deprived of "equal rights and privileges as opposed to a full-time employee," Dkt. No. 145 at 5, but temporary employee is not a protected class.

**Copy by United States Mail to:**

**Curtis Westbrook**
**1113 East 6th St.**
**Muncie, IN  47302**

Copies to all counsel of record via electronic filing